1  STEPHEN G. LARSON (SBN 145225)
   slarson@larsonobrienlaw.com
2  STEVEN E. BLEDSOE (SBN 157811)
   sbledsoe@larsonobrienlaw.com
3  R.C. HARLAN (SBN 234279)
   rcharlan@larsonobrienlaw.com
4  **LARSON O'BRIEN LLP**
   555 South Flower Street, Suite 4400
5  Los Angeles, California 90071
   Telephone: 213.436.4888
6
   Attorneys for Plaintiffs Dean Poe, Dana
7  Poe, Kyle Poe, Karlee Poe, Kody Poe,
   Noah Martinez, and David Wirsing
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11  DEAN POE, DANA POE, KYLE          Case No.
    POE, KARLEE POE, KODY POE,
12  NOAH MARTINEZ, and DAVID          COMPLAINT FOR DECLARATORY
    WIRSING,                          RELIEF, INJUNCTIVE RELIEF, AND
13                                    DAMAGES, FOR:
               Plaintiffs,
14                                    (1)  UNREASONABLE SEARCHES (42
    v.                                     U.S.C. § 1983);
15                                    (2)  UNREASONABLE SEARCHES
    COUNTY OF VENTURA, a local             (Cal. Civ. Code § 52.1);
16  public entity; DISTRICT           (3)  EXCESSIVE FORCE (42 U.S.C.
    ATTORNEY GREGORY D.                    § 1983);
17  TOTTEN, DEPUTY DISTRICT           (4)  EXCESSIVE FORCE (Cal Civ.
    ATTORNEY CHRIS HARMAN,                 Code § 52.1);
18  DEPUTY DISTRICT ATTORNEY          (5)  RETALIATION (42 U.S.C. § 1983);
    KAREN WOLD, DISTRICT              (6)  RETALIATION (Cal. Civ. Code
19  ATTORNEY INVESTIGATOR JEFF             § 52.1);
    BARRY, SHERIFF GEOFF DEAN,        (7)  POLITICAL DISCRIMINATION
20  PAUL KRUEGER, RYAN                     (42 U.S.C. § 1983);
    HAMLIN, JOEY DE LOS REYES,        (8)  POLITICAL DISCRIMINATION
21  ROBERT MACINNES, and CHRIS             (Cal. Civ. Code §§ 52.1 and 51.7(a));
    BORKOVEC in their individual and  (9)  *MONELL* CLAIM (42 U.S.C.
22  official capacities; and DOES 1–10,    § 1983);
    in their individual and official  (10) VIOLATION OF CAL. CIV. CODE
23  capacities,                            § 52.3;
                                      (11) ASSAULT;
24             Defendants.            (12) INTENTIONAL INFLICTION OF
                                           EMOTIONAL DISTRESS;
25                                    (13) NEGLIGENT INFLICTION OF
                                           EMOTIONAL DISTRESS;
26                                    (14) FALSE IMPRISONMENT
27                                    DEMAND FOR JURY TRIAL
28

                                                          **COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs DEAN POE, DANA POE, KYLE POE, KARLEE POE, KODY POE, NOAH MARTINEZ, and DAVID WIRSING (collectively, "Plaintiffs") bring this action seeking declaratory relief, injunctive relief, compensatory damages, and punitive damages against Defendants COUNTY OF VENTURA, DISTRICT ATTORNEY GREGORY D. TOTTEN, DEPUTY DISTRICT ATTORNEY CHRIS HARMAN, DEPUTY DISTRICT ATTORNEY KAREN WOLD, DISTRICT ATTORNEY INVESTIGATOR JEFF BARRY, SHERIFF GEOFF DEAN, PAUL KRUEGER, RYAN HAMLIN, JOEY DE LOS REYES, ROBERT MACINNES, CHRIS BORKOVEC, and DOES 1–10 (collectively "Defendants") for violations of Plaintiffs' civil and other rights under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, and under California law.

2.      Defendants have aggressively and vindictively harassed, intimidated, and retaliated against Plaintiffs, employees of Southern California Waste Water f/k/a Santa Clara Waste Water ("SCWW"), a wholly owned subsidiary of Green Compass Environmental Solutions, Inc. ("GREEN COMPASS"), and their families (including children), because firefighters were purportedly injured at an accident at the SCWW facility in Ventura County on November 18, 2014 (the "Accident").

3.      Shortly after the Accident, Plaintiff DAVID WIRSING, in his ongoing efforts to assist the response to the Accident, told Defendant BARRY that he believed the responding firefighters were injured in part because they violated safety protocols while responding to the Accident.  Incensed by WIRSING's candor, Defendants have maliciously retaliated through a full-scale, oppressive campaign of intimidation, including illegal searches and seizures of Plaintiffs' homes and illegal strip searches of Plaintiffs' persons.

4.      Defendants, including a SWAT Team controlled by the District Attorney's office, executed a search warrant at the Wirsing Residence during very

**COMPLAINT**

early morning hours.  More than twenty COUNTY and D.A. SWAT vehicles descended on the cul-de-sac where the Wirsing Residence is located.  More than twenty-three (23) COUNTY and D.A. SWAT Team members, including approximately eight (8) in full tactical gear, *with guns and riot shields drawn*, executed the search warrant.  The search warrant was related only to alleged regulatory violations at SCWW.  There were no allegations of dangerous activity at the Wirsing Residence.

5.     WIRSING's wife and six-year-old daughter were home alone.  Armed SWAT Team members hauled them out of the house in their pajamas, where they were forced to stand outside in the cold for hours, under armed guard.  Defendants harshly treated WIRSING's six-year-old daughter, exposing her to irrevocable trauma caused by unnecessary guns, riot gear, and other wanton and vindictive shows of force.  At one point, she was separated from her mother and detained in a police vehicle on the pretext of "calming" her down.  Defendants refused to produce their search warrant and even attempted to seize Ms. Wirsing's personal cell phone, though she has no relationship to SCWW at all.

6.     This was only the first step in Defendants' dedicated campaign of harassment and vilification.  Over the course of the next six months, Defendants followed, surveilled, harassed, and intimidated SCWW employees.

7.     For example, Defendants harassed, intimidated, and embarrassed DEAN POE when serving a subpoena on him.  One Sunday evening, DEAN POE was out to dinner with his wife.  Meanwhile, unbeknownst to him, two undercover police officers were going door to door in his neighborhood—despite knowing exactly where he lived—showing his neighbors a photograph of him and asking if they knew the man in the photograph.  DEAN POE arrived home after receiving a call from his daughter that there were people looking for him.  Upon his arrival, he was confronted by these undercover cops and he was served with a subpoena.

**COMPLAINT**

1    DEAN POE has lived in that same neighborhood for over 20 years.  He has not

2    been treated the same since.

3        8.    Defendants' escalated their harassment when they executed a search

4    warrant at the Poes' Residence.  Again, the pretext for the search was some

5    supposed connection between the Poes' personal residence and the alleged

6    regulatory violations at SCWW.  But once again, without justification, Defendants

7    deployed the D.A. SWAT Team in full tactical gear with guns and riot shields

8    drawn.  The SWAT Team detained the Poes—including their minor-aged

9    children—with assault rifles:



16       9.    The D.A. SWAT Team hauled DEAN POE, DANA POE, KYLE POE,

17   KARLEE POE, KODY POE, and NOAH MARTINEZ (the "POE RESIDENCE

18   PLAINTIFFS") outside their residence, wearing only their underwear.  The D.A

19   SWAT Team again refused to show their search warrant, and again detained DEAN

20   POE, DANA POE, KYLE POE, KARLEE POE, and KODY POE under armed

21   guard.  While the POE RESIDENCE PLAINTIFFS were forced at gunpoint to

22   stand in their underwear outside the residence, Defendants ransacked the Poe

23   Residence and seized items unrelated to SCWW.

24       10.   Defendants' retaliation did not end there.  In August 2015, Defendants

25   arrested WIRSING, DEAN POE, and other SCWW employees.  WIRSING's and

26   DEAN POE's criminal defense attorneys made arrangements for them to

27   voluntarily surrender for booking, processing, and bail.

28

**COMPLAINT**

11.     However, when WIRSING, DEAN POE, and other SCWW employees were booked and processed, Defendants unnecessarily and illegally strip and visual cavity searched them.  Defendants carried out the strip and visual cavity searches in a group, communal setting in violation of stated policies and procedures—all to retaliate against WIRSING, DEAN POE, and other SCWW employees.

12.     Defendants had no reason to perform strip and cavity searches on WIRSING and DEAN POE.  These searches violated Defendants' own policies and procedures.  In fact, at least one other SCWW employee—who was arrested, booked, and processed on a later date—was not strip or visual cavity searched.  In the wake of Defendants' harassment of Plaintiffs, that employee's attorney delivered a letter stating that such a strip search was unnecessary and unconstitutional.  Recognizing that their abuses were beginning to attract unwelcome attention, Defendants were forced to back off.

13.     Defendants have also concealed evidence and sought to punish WIRSING, DEAN POE, and others for asserting their constitutional rights.  Deputy District Attorneys, including but not limited to Defendants HARMAN and WOLD, concealed evidence for months in retaliation against SCWW employees for asserting their Fifth Amendment rights.  Defendant HARMAN admitted in open court that he was withholding evidence as retaliation for SCWW employees asserting their Fifth Amendment rights.  On September 15, 2015, Defendant HARMAN stated that the decision to knowingly withhold evidence was "vetted by layers of management" at the District Attorney's office, characterizing the assertion of Fifth Amendment rights by witnesses before the grand jury as "brazen interference with an investigation and Grand Jury investigation."  Subsequently, the criminal court and the court of appeal made findings that Defendants HARMAN and WOLD unreasonably withheld evidence, and Defendant HARMAN was removed as the case prosecutor.  Defendant Harman's actions are now being

**COMPLAINT**

investigated by a Professional Responsibility Committee commissioned by the District Attorney, and fellow Defendant, Gregory Totten.

14. Defendants' vindictive actions are appalling, violate 42 U.S.C. § 1983 and California law, and as a direct and proximate result of Defendants' wanton disregard of Plaintiffs' rights, Plaintiffs have suffered and will continue to suffer damages. Plaintiffs are therefore entitled to injunctive relief, declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other available and appropriate relief.

## JURISDICTION AND VENUE

15. This case arises under 42 U.S.C. § 1983 and California law. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

16. Pursuant to Government Code §§ 900 *et seq.*, Plaintiffs filed these claims with the County of Ventura on January 28, 2016. On March 3, 2016, the County of Ventura rejected these claims. Pursuant to Government Code § 945.6, Plaintiffs are now filing these claims with this Court.

17. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this District and substantial acts and omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

18. Plaintiff DEAN POE brings this action in his individual capacity. He was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America. He timely filed his claim with the County of Ventura. He is the Vice President, Oil & Gas Sales, for GREEN COMPASS, the corporate parent of SCWW.

19. Plaintiff DANA POE was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America. She timely filed a tort claim with the County of Ventura.

**COMPLAINT**

20.     Plaintiff KYLE POE was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America. He timely filed a tort claim with the County of Ventura.

21.     Plaintiff KARLEE POE was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America.  She timely filed a tort claim with the County of Ventura.

22.     Plaintiff KODY POE was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America. He timely filed a tort claim with the County of Ventura.

23.     Plaintiff NOAH MARTINEZ was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America.  He timely filed a tort claim with the County of Ventura.

24.     Plaintiff DAVID WIRSING was at all relevant times a resident of the County of Ventura and a citizen of the State of California and the United States of America.  He was a transportation manager for GREEN COMPASS, the corporate parent of SCWW.  He timely filed a tort claim with the County of Ventura.

25.     Defendant COUNTY OF VENTURA ("COUNTY") is a municipal corporation organized and existing under the laws of the State of California. Defendant COUNTY is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Ventura County Sheriff's Office (the "Sheriff's Office"), the Ventura County Main Jail (the "Jail"), the Ventura County District Attorney's Office (the "D.A.'s Office"), the Ventura County District Attorney's SWAT Team (the "D.A. SWAT Team"), and their respective employees, agents, and officers.

26.     At all relevant times, Defendant GREGORY TOTTEN ("TOTTEN") was the District Attorney of the County of Ventura.  In that capacity, he is the official responsible for setting and enforcing the policies, customs, and practices of the D.A.'s Office and the D.A. SWAT Team.  Defendant TOTTEN at all times

**COMPLAINT**

1  directed, authorized, and/or ratified the actions of other D.A.'s Office and D.A.

2  SWAT Team employees, agents, and officials. Based on information and belief,

3  and as described herein, Defendant TOTTEN authorized the D.A. SWAT Team and

4  its members to operate without sufficient training and experience as special tactics

5  team members, and without sufficient protocols for the execution of special tactics

6  or the use of force. On information and belief, and as described herein, Defendant

7  TOTTEN also authorized the D.A. SWAT Team's unlawful searches of the Poe and

8  Wirsing Residences and the unlawful detentions of each Plaintiff.

9      27.   At all relevant times, Defendant Deputy District Attorney CHRIS

10 HARMAN ("HARMAN") was a deputy district attorney for the County of Ventura.

11 He is employed by and is an agent of Defendant COUNTY and the D.A.'s Office.

12 Based on information and belief, and as described herein, Defendant HARMAN

13 concealed evidence for months in a criminal case against SCWW, POE and

14 WIRSING, and others, in retaliation for certain SCWW employees asserting their

15 Fifth Amendment rights.

16     28.   At all relevant times, Defendant Deputy District Attorney KAREN

17 WOLD ("WOLD") was a deputy district attorney for the County of Ventura. She is

18 employed by and is an agent of Defendant COUNTY and the D.A.'s Office. Based

19 on information and belief, and as described herein, Defendant WOLD concealed

20 evidence for months after repeated discovery requests in a criminal case against

21 SCWW, Plaintiffs DEAN POE and DAVID WIRSING, and others, in retaliation

22 for certain SCWW employees asserting their Fifth Amendment rights.

23     29.   At all relevant times, Defendant District Attorney Investigator JEFF

24 BARRY ("BARRY") is an investigator in the D.A.'s office. He is employed by

25 and is an agent of Defendant COUNTY, the D.A.'s Office, and the D.A. SWAT

26 Team. Based on information and belief, and as described herein, Defendant

27 BARRY was the lead D.A. investigator, participated and personally seized items in

28 the unlawful searches of the Poe and Wirsing Residences, and personally threatened

**COMPLAINT**

1  WIRSING in retaliation for WIRSING's comments about the first responders to the

2  Accident.

3      30.    At all relevant times, Defendant Sheriff GEOFF DEAN ("SHERIFF

4  DEAN") was Sheriff of the County of Ventura.  In that capacity he is the official

5  responsible for setting and enforcing the policies, customs, and practices of the

6  Sheriff's Office.  Defendant SHERIFF DEAN at all times directed, authorized,

7  and/or ratified the actions of other Sheriff's Office employees, agents, and officials.

8  Based on information and belief, and as described herein, Defendant SHERIFF

9  DEAN directed, authorized, permitted, and/or ratified the unlawful strip and visual

10  cavity searches of Plaintiffs DEAN POE, WIRSING, and others by personnel at the

11  Jail.

12      31.    At all relevant times, Defendant PAUL KRUEGER ("KRUEGER")

13  was an investigator in the D.A.'s office.  He is employed by and is an agent of

14  Defendant COUNTY, the D.A.'s Office, and the D.A. SWAT Team.  Based on

15  information and belief, and as described herein, Defendant KRUEGER is a D.A.

16  investigator who participated and personally seized items in each of the unlawful

17  searches at the Poe and Wirsing Residences, and participated in unlawfully

18  detaining Plaintiffs during the searches at the Wirsing and Poe Residences.

19      32.    At all relevant times, Defendant RYAN HAMLIN ("HAMLIN") was

20  an investigator in the D.A.'s office.  He is employed by and is an agent of

21  Defendant COUNTY, the D.A.'s Office, and the D.A. SWAT Team.  Based on

22  information and belief, and as described herein, Defendant HAMLIN participated

23  and personally seized items in the unlawful search of the Poe Residence, and

24  participated in the unlawful detentions of the POE RESIDENCE PLAINTIFFS

25  during the search at the Poe Residence.

26      33.    At all relevant times, Defendant JOEY DE LOS REYES ("DE LOS

27  REYES") was a D.A. investigator.  He is employed by and is an agent of Defendant

28  COUNTY, the D.A.'s Office, and the D.A. SWAT Team.  Based on information

1  and belief, and as described herein, Defendant DE LOS REYES participated and
2  personally seized items in the unlawful search at the Wirsing Residence, and
3  participated in the unlawful detention of Plaintiff DAVID WIRSING.

4      34.   At all relevant times, Defendant ROBERT MACINNES
5  ("MACINNES") was an investigator in the D.A.'s office.  He is employed by and is
6  an agent of Defendant COUNTY, the D.A.'s Office, and the D.A. SWAT Team.
7  Based on information and belief, and as described herein, Defendant MACINNES
8  participated in the unlawful search of the Poe Residence, pointed an assault rifle or
9  other firearm at the POE RESIDENCE PLAINTIFFS during the search of the Poe
10  Residence, and participated in the unlawful detentions of the POE RESIDENCE
11  PLAINTIFFS during the search of the Poe Residence.

12      35.   At all relevant times, Defendant CHRIS BORKOVEC
13  ("BORKOVEC") was a D.A. investigator.  He is employed by and is an agent of
14  Defendant COUNTY, the D.A.'s Office, and the D.A. SWAT Team.  Based on
15  information and belief, and as described herein, Defendant BORKOVEC
16  participated and personally seized items in the unlawful search at the Wirsing
17  Residence, and participated in the unlawful detention of Plaintiff DAVID
18  WIRSING during the search at the Wirsing Residence.

19      36.   The true names and identities of Defendants DOES 1–10 are currently
20  unknown to Plaintiffs.  Plaintiffs will seek leave to amend this Complaint when the
21  names and identities of DOES 1–10 have been ascertained.  Based on information
22  and belief, and as described herein, Defendants DOES 1–10 are members of the
23  D.A. SWAT Team or other employees of the D.A.'s Office or COUNTY, who
24  participated in the unlawful searches of the Poe and Wirsing Residences, are
25  members of the D.A. SWAT Team  or other employees of the D.A.'s Office or
26  COUNTY who participated in the unlawful detentions of Plaintiffs during the
27  searches at the Poe and Wirsing Residences, or are members of the Sheriff's Office
28

**COMPLAINT**

1  who participated in the unlawful strip searches and visual cavity searches of DEAN

2  POE, WIRSING, and others at the Jail.

3      37.     At all times relevant, COUNTY employed the individual Defendants

4  as members of the Sheriff's Office, the D.A.'s Office, the D.A. SWAT Team, or the

5  Jail.

6      38.     COUNTY provided the individual Defendants with official badges,

7  identification cards, uniforms, and marked and unmarked official vehicles.  At all

8  material times, the individual Defendants acted under color of law, acted in concert

9  with one another, and acted under the customs, policies, practices, and usages of

10  COUNTY.

11      39.     On information and belief, COUNTY employed and authorized

12  members of the D.A.'s Office as a D.A. SWAT Team.  D.A. SWAT Team

13  members include, for example, Defendant MACINNES.  COUNTY provided the

14  D.A. SWAT Team with tactical gear, riot gear, a battering ram, specialized

15  weaponry, and unmarked vehicles.  At all material times, the D.A. SWAT Team

16  members acted under color of law, acted in concert with one another, and acted

17  under the customs, policies, practices, and usages of COUNTY.

18      40.     On information and belief, COUNTY-employed personnel at the Jail

19  processed, strip searched, and visual cavity searched Plaintiffs DEAN POE,

20  DAVID WIRSING, and others in or about August 2015.

21      41.     At all relevant times, Defendants acted under color of law.

22                      **FACTUAL ALLEGATIONS**

23      42.     SCWW is a company, based in Ventura County, California, that has

24  operated since 1959 providing environmentally safe means of treating, disposing,

25  and recycling contaminated, but non-hazardous waste.  These fluids are transported

26  to the facility via vacuum and tanker trucks and inspected upon arrival.  If, upon

27  inspection, the waste does not fall into the company's analytical requirements, it is

28  rejected.  Otherwise, the waste is received and processed by SCWW personnel.

**COMPLAINT**

43.     The Accident, an explosion and chemical spill, occurred at the SCWW Facility on November 18, 2014.  The Ventura County Fire Department and Sheriff's Office responded to the Accident.  Unfortunately, certain individuals were injured, including at least two firefighters who, on information and belief, were injured when they walked onto the chemical spill and the chemicals caused their boots to ignite.

44.     WIRSING was the transportation manager of GREEN COMPASS, the parent company of SCWW, and Plaintiff DEAN POE was the Vice President of Oil & Gas Sales at GREEN COMPASS, the parent company of SCWW.  After the Accident, WIRSING was overheard by investigators for the District Attorney's office stating his opinion that the firefighters were injured in part because their own conduct and response to the Accident violated safety protocols, for example, by driving a fire engine, then walking, directly on the chemical spill.  On information and belief, these investigators informed Defendant BARRY of WIRSING's comments.  Defendant BARRY and others launched their campaign of harassment in retaliation for WIRSING's comments.

45.     On information and belief, WIRSING's comments were personally offensive to agents, officials, and/or employees of the Sheriff's Office, Jail, D.A.'s Office, and D.A. SWAT Team members.  Defendants intentionally and maliciously retaliated against SCWW, its employees, and their families.  To that end, Defendants: (1) executed harassing, abusive, and humiliating searches of the Wirsing and Poe Residences; and (2) subjected DEAN POE and WIRSING to harassing, abusive, humiliating, and illegal strip and visual cavity searches in a group, communal setting for no legitimate law enforcement purpose and in violation of established policy and procedure.

**Unlawful Search of the Wirsing Residence**

46.     On December 17, 2014, at approximately 6:00 a.m., Defendants executed a search warrant on the Wirsing Residence, located at 343 Amador

Avenue, Ventura, CA 93004.  The manner in which Defendants executed the search warrant on the Wirsing Residence was unlawful, and constitutes an unconstitutional search in violation of WIRSING's constitutional rights to be free of unreasonable searches under the Fourth Amendment.  An owner and resident of his property, WIRSING had a reasonable expectation of privacy in the Wirsing Residence.

47.     The search warrant purportedly authorized the D.A.'s Office and D.A. SWAT Team to search the Wirsing Residence for documents, manifests, communications, and correspondence related to the Accident.

48.     The Accident did not involve, weapons, drugs, or a violent crime. WIRSING was not under arrest for any charges relating to the Accident before or during the search.  WIRSING was, at the time of the search, only under investigation for his alleged connection to the Accident as GREEN COMPASS transportation manager.

49.     Nonetheless, WIRSING's wife and six (6) year old daughter (collectively, the "Wirsing Family") were awoken on December 17, 2014, by approximately twenty-three (23) COUNTY and D.A. personnel, including approximately eight (8) in SWAT tactical gear, with guns drawn.  On information and belief, the D.A. SWAT Team, who have insufficient training and experience as special tactics team members, executed the search on the Wirsing Residence in SWAT tactical gear, including guns drawn, to retaliate against, harass, and intimidate the Wirsing Family.

50.     In furtherance of their retaliation, harassment, and intimidation of WIRSING, Defendants:

a) ordered WIRSING's wife and six (6) year old daughter out of the house and into the cold in their pajamas;

b) forced the Wirsing Family to sit outside and held them under armed guard for approximately five (5) hours in front of their on-looking neighbors;

**COMPLAINT**

c) attempted to take Ms. Wirsing's personal cell phone, which obviously had no connection to the Accident, until the Wirsing Family's neighbor, an attorney, intervened and said she would represent Ms. Wirsing;

d) demonstrated that, after Ms. Wirsing was represented by counsel and her personal cell phone was not seized, the attempt to seize her personal cell phone was meant only to retaliate against, harass, and intimidate WIRSING and his family;

e) refused to produce their search warrant;

f) executed search warrants on computers without first following the warrant's approved search protocol;

g) placed armed officers around the Wirsing Residence as though they were securing the home of a dangerous criminal arrested or charged in connection with a crime involving weapons, drugs, or violence;

h) retaliated against, harassed, and intimidated WIRSING and his six (6) year old daughter by detaining her in a vehicle allegedly to "calm her down," while failing to utilize a plain-clothed female officer to effect this detention;

i) threatened and intimidated WIRSING by saying the D.A.'s Office would prosecute him more harshly if he ever repeated his comment that first responders to the Accident were injured in part because of their own conduct;

j) ransacked WIRSING's entire home, including the attic, closets, his personal office, garage, and personal car;

k) purported to search only for evidence related to the Accident, yet searched Ms. Wirsing's personal car; and

l) threatened WIRSING that his life would never be the same again.

**COMPLAINT**

51.     As described above, Defendants' search and detention of the Wirsing Family utilized excessive force and thereby violated WIRSING's rights under the Fourth Amendment to be free from unreasonable seizures.  Specifically, Defendants executed the search in full tactical gear, including assault rifles, riot shields, and a battering ram even though:

    a) they were only executing a search warrant and were not making any arrests;

    b) they were only executing a search warrant in connection with an investigation of an offense that did not include any allegations of weapons, drugs, or violence;

    c) they were only executing a search warrant whose affidavit made no mention of weapons, drugs, or violent individuals at the Residence to be searched; and

    d) they did not follow the policies and protocols of any threat assessment.

52.     Defendant BARRY confirmed that the illegal search of the Wirsing Residence was in retaliation for WIRSING's comments when he aggressively pointed his finger in WIRSING's face and threatened *that Wirsing would pay for what he said about the County's response to the Accident and his life would never be the same because of it*.

53.     Defendants' conduct bore no reasonable relation to any legitimate law enforcement purpose.  Instead, their conduct was retaliatory and designed to intimidate, harass, and humiliate WIRSING.  Defendants' own statements reveal the unlawful retaliatory intent in searching the Wirsing Residence.

54.     As a result of Defendants' unlawful conduct, WIRSING has suffered great humiliation, embarrassment, and mental anguish, including post-traumatic stress disorder and a sleeping disorder.

55.     The Wirsing Residence was one of multiple residences searched in this retaliatory, harassing, and unreasonable manner.  Thus, COUNTY permitted and/or

ratified through the conduct of its agents, officials, employees, or personnel—including but not limited to Defendant TOTTEN and Defendant SHERIFF DEAN—a pattern, practice, custom, or usage of retaliating against individuals who were connected to SCWW or spoke negatively about the first responders to the Accident.  That pattern, practice, custom, and/or usage harmed WIRSING and his family.

**Unlawful Search of the Poe Residence**

56.     On July 31, 2015, at approximately 7:30 a.m., Defendants executed a search warrant on the Poe Residence, located at 791 Ann Arbor Avenue, Ventura, California 93004.

57.     Each of the POE RESIDENCE PLAINTIFFS had a reasonable expectation of privacy in the Poe Residence, either as a resident or overnight guest.

58.     The search warrant purportedly authorized the D.A.'s Office to search the Poe Residence for documents, manifests, communications, and correspondence relating to DEAN POE and the Accident.

59.     The Accident and the investigation of DEAN POE did not involve allegations of weapons, drugs, or violence.  None of the POE RESIDENCE PLAINTIFFS were under arrest, including DEAN POE, who was at the time only under investigation for his alleged connection to the Accident.  The search of the Poe Residence on July 31, 2015, was not executed incident to any arrest, but instead was executed purportedly in search of business records and other evidence relating to the Accident.

60.     Yet, the POE RESIDENCE PLAINTIFFS, including DEAN POE's wife, who was recovering from cancer treatment, his children, and his daughter's boyfriend, were hauled out of the Poe Residence on July 31, 2015, by the D.A. SWAT Team in full tactical gear, including guns drawn, riot shields, and a battering ram.  On information and belief, the D.A. SWAT Team does not have current

**COMPLAINT**

training or experience as police officers or as a SWAT team trained and certified to use tactical gear, assault rifles, other firearms, and other weapons.

61. Defendants conducted the search of the Poe Residence in furtherance of their retaliation, intimidation, and harassment of SCWW employees and their families, like the POE RESIDENCE PLAINTIFFS. Defendants thereby violated the POE RESIDENCE PLAINTIFFS' rights under the Fourth Amendment to be free from unreasonable searches. Specifically, the D.A. SWAT Team, *inter alia*:

a) forcibly and conspicuously turned two (2) of the Poe Residence's four (4) security cameras to face walls, so the cameras would not capture the SWAT Team's conduct during its illegal search of the Poe Residence;

b) unnecessarily and unreasonably threatened the POE RESIDENCE PLAINTIFFS with assault rifles and other fire arms, including pointing those assault rifles and fire arms at the POE RESIDENCE PLAINTIFFS, who were at all times compliant, unarmed, and non-threatening;

c) ordered the POE RESIDENCE PLAINTIFFS out of the house in their underwear, detained them under armed guard, and forced them to wait outside for approximately two (2) hours in front of their on-looking neighbors and law enforcement officers;

d) refused to produce the search warrant, and refused to answer the POE RESIDENCE PLAINTIFFS' simple questions as to why the house was being searched or why DEAN POE's wife and children were being detained;

e) threatened to break open the Poe family's personal safe, even though DEAN POE told them it was the family's personal safe and despite the fact that DEAN POE offered to open the safe using the key;

**COMPLAINT**

f)  executed search warrants on computers without first following the
    search protocol specifically set forth in and required by the warrant,
    including seizing the personal computer of DEAN POE's daughter,
    KARLEE POE;

g)  purported to search only for evidence related to the Accident, yet
    searched items with no relation at all to the Accident, such as the
    master bedroom closet, the master bedroom drawers, the children's
    bedrooms, and the children's bedroom drawers;

h)  purported to search only for evidence related to the Accident, yet
    ransacked the master bedroom closet by throwing attic insulation on
    the clothes and other items in the closet;

i)  executed the search as though they were executing the arrest of a
    violent and dangerous criminal when, in fact, they were not arresting
    anyone, but were only searching for evidence related to alleged
    regulatory violations in connection with the Accident and SCWW; and

j)  threatened DEAN POE's son, KODY POE, that he had better "be
    careful" about his air soft gun, because it looks real, and presumably
    something bad would happen to him as a result.

62.  As described above, Defendants' search of and detentions of the POE
RESIDENCE PLAINTIFFS utilized excessive force and thereby also violated the
POE RESIDENCE PLAINTIFFS' rights under the Fourth Amendment to be free
from unreasonable seizures.  Specifically, Defendants, *inter alia*, executed the
search in full tactical gear, including assault weapons, riot shields, and a battering
ram:

a)  though they were only executing a search warrant and were not
    making any arrests;

- 17 -

**COMPLAINT**

b) though they were only executing a search warrant in furtherance of an investigation of an offense that did not include any allegations of weapons, drugs, or violence;

c) though they were only executing a search warrant whose affidavit made no mention of weapons, drugs, or violent individuals at the Residence to be searched; and

d) though they were only executing a search warrant and did not follow the policies and protocols of any threat assessment.

63.     Based on information and belief, Defendants conducted the search of the Poe Residence and detained the POE RESIDENCE PLAINTIFFS in the manner they did in retaliation for DEAN POE's connection:  (1) to SCWW and the Accident; (2) to WIRSING as a co-worker; and (3) therefore to WIRSING's statements about the first responders' response to the Accident.  Based on information and belief, Defendants therefore executed the search and detained the POE RESIDENCE PLAINTIFFS to retaliate against, punish, harass, and humiliate the POE RESIDENCE PLAINTIFFS.  Defendants' conduct bore no reasonable relationship to any legitimate law enforcement purpose.

64.     The Poe Residence was one of multiple residences searched in this retaliatory, harassing, and unreasonable manner.  Thus, COUNTY permitted and/or ratified through the conduct of its agents, officials, and/or employees—including but not limited to Defendant TOTTEN and Defendant SHERIFF DEAN—a pattern, practice, custom, and/or usage of retaliating against employees of SCWW and their families.  That pattern, practice, custom, and/or usage harmed each of the POE RESIDENCE PLAINTIFFS.

**Unlawful Strip Searches**

65.     Understanding that arrest was imminent, WIRSING and DEAN POE's defense attorneys made arrangements for them to voluntarily surrender for booking, processing, and bail.

**COMPLAINT**

66.     DEAN POE was arrested and processed on August 7, 2015, on charges related to alleged regulatory violations and the Accident at SCWW—charges that do not involve allegations of weapons, drugs, or violence.

67.     Defendants subjected DEAN POE and his fellow SCWW co-workers to a strip search, including a visual cavity search, in a group, communal setting in retaliation for their connection to SCWW.  For example, Defendants forced DEAN POE together with his co-workers to strip down, bend over forward, and cough twice, though they were not suspected of having drugs, weapons, or contraband of any sort, nor had they been booked for a crime involving violence, drugs, weapons, or contraband.  Defendants had no bona-fide security reason to impose these intrusive searches.  Further, Defendants carried out the strip and visual cavity searches despite knowing that DEAN POE would make bail, as arranged with his attorney before the arrest.

68.     Defendants imposed the strip search on DEAN POE and his co-workers without reasonable suspicion, or any suspicion, that DEAN POE and the others possessed drugs, weapons, or contraband.  Thus, Defendants imposed the strip search on DEAN POE and his co-workers in direct violation of clearly established Ninth Circuit law and the Sheriff's Office's own policies and procedures on strip searches, which allows strip searches of individuals during the booking process only if: (1) "there is reasonable suspicion unique to the particular inmate sought to be strip searched, indicating current possession of contraband that may be visually detected as a result of the search"; (2) written permission is obtained from the Jail Watch Commander or Facility Sergeant to conduct the strip search; and (3) the strip search is "conducted following the authorization procedures as outlined in Detention Services Divisional Policy 12-23 – Strip Search Policy."  On information and belief, none of the aforementioned conditions was satisfied before or during the strip search imposed on DEAN POE and others.

**COMPLAINT**

69.    Moreover, Defendants strip-searched DEAN POE and his fellow SCWW co-workers in a public area in the Jail where they could be, and were, seen by persons other than those whose official responsibility involved conducting the search.  DEAN POE was forced to strip down naked, bend over, and have his cavities examined while in front of individuals with whom he works every day, while being observed by multiple jail personnel and other inmates.

70.    In addition, on August 11, 2015, WIRSING surrendered himself on charges allegedly related to the Accident—charges not involving allegations of weapons, drugs, or violence.  WIRSING was also strip and cavity searched, in a communal setting, even though Jail deputies lacked reasonable suspicion, or any suspicion, that WIRSING at the time possessed weapons, drugs, or contraband, and knowing that WIRSING's attorney had arranged to make bail.  Thus, Defendants imposed the strip search on WIRSING in direct violation of clearly established Ninth Circuit law and the Sheriff's Office's own policies and procedures on strip searches, which allows strip searches of individuals during the booking process only if: (1) "there is reasonable suspicion unique to the particular inmate sought to be strip searched, indicating current possession of contraband that may be visually detected as a result of the search"; (2) written permission is obtained from the Jail Watch Commander or Facility Sergeant to conduct the strip search; and (3) the strip search is "conducted following the authorization procedures as outlined in Detention Services Divisional Policy 12-23 – Strip Search Policy."  On information and belief, none of the aforementioned conditions was satisfied before or during the strip search imposed on WIRSING.

71.    Like WIRSING and DEAN POE, William Mitzel, the Chief Executive Officer of SCWW, was arrested and booked for charges allegedly related to the Accident.  However, in advance of his voluntary surrender, his attorney, Barry Groveman, delivered a letter to, among others, Jail personnel, demanding that Mr. Mitzel not be subjected to the harassing and embarrassing strip and visual cavity

**COMPLAINT**

search that the other SCWW employees had been subjected to.  Accordingly, Mr. Mitzel was not strip or cavity searched.  Defendants did not have a generally applicable policy of strip-searching all detainees, and could not have a constitutional policy of strip-searching all detainees without regard to suspicion of drugs, weapons, contraband, concealment of evidence, or the crime for which they were charged.  Instead, the fact that Mr. Mitzel was not strip searched when booked under the same circumstances as DEAN POE, WIRSING, and others indicates that Defendants executed the strip searches to retaliate against, intimidate, punish, harass, and embarrass SCWW employees.  These actions ceased only when attention was drawn to Defendants' illegal practices.

72.     Based on information and belief and the circumstances surrounding the strip and visual cavity searches of DEAN POE, WIRSING, and others, COUNTY had a pattern, practice, and usage, as carried out by Sheriff's Office and Jail employees, of imposing retaliatory strip searches and visual cavity searches on SCWW employees when they were arrested for charges purportedly related to the Accident without regard to the nature of the charges for which they had been arrested and without reasonable suspicion of drugs, weapons, and contraband.

73.     Defendants acted under color of law in their individual and official capacities when strip and visual cavity searching DEAN POE, WIRSING, and others.  Defendants strip and cavity searched DEAN POE, WIRSING, and others to retaliate against, intimidate, punish, harass, and embarrass them.  Defendants thereby violated DEAN POE's, WIRSING's, and others' rights to privacy and to be free from unreasonable seizures secured by the Fourth and Fourteenth Amendments.

74.     Defendants acted together with an intent to retaliate against DEAN POE, WIRSING, and their families because of DEAN POE's and WIRSING's employment by SCWW and their purported connections to the Accident.

COMPLAINT

**Further Retaliation**

75.     The D.A.'s Office and its personnel, including but not limited to Defendants HARMAN and WOLD have engaged in further retaliation against DEAN POE, WIRSING, and other SCWW employees.

76.     For example, Defendants HARMAN and WOLD undertook a strategy of intentionally concealing and withholding evidence in the criminal case against SCWW and, among others, DEAN POE and WIRSING.

77.     Defendants HARMAN and WOLD withheld the properly requested employee personnel file of Michael Grindrod, because the employee personnel file of Michael "Grinrod" was requested—i.e., the "d" between the "n" and the "r" was inadvertently omitted.  When the trial court inquired about Defendants HARMAN and WOLD's position as to why they withheld the personnel file after repeated written and verbal requests, Defendant HARMAN pretextually responded that that D.A.'s policy was to construe California Penal Code § 1536 requests strictly, "and since there was no files with that spelling, there was nothing produced."  This explanation came after Defendants HARMAN and WOLD repeatedly represented to the trial court that the employee personnel file either did not exist or could not be found—patent misrepresentations in retaliation for DEAN POE's, WIRSING's, and others' supposed failure to "cooperate" to the satisfaction of the D.A.'s Office and Defendants HARMAN and WOLD.

78.     The court later found that Defendants HARMAN, WOLD, and the D.A.'s Office engaged in unreasonable conduct with regard to the personnel file. Based on information and belief, after numerous other misrepresentations to the trial court and counsel in the criminal case, and after the issues with Defendant HARMAN's retaliatory tactics and misrepresentations were raised with the trial court, Defendant TOTTEN removed Defendant HARMAN from prosecuting the criminal case against DEAN POE, WIRSING, and others.  But Defendant TOTTEN's action was too little, too late, as Defendants HARMAN and WOLD had

1   already violated DEAN POE's and WIRSING's rights under the U.S. Constitution

2   and California law.

3       79.    Defendant HARMAN informed the Court that his strategy of

4   withholding documents resulted from his own personal judgment that DEAN POE

5   and WIRSING were "not cooperating" with the D.A.'s Office, and were instead

6   following the advice of their legal counsel and asserting their Fifth Amendment

7   rights.  Defendant HARMAN verbally attacked and attempted to intimidate DEAN

8   POE and WIRSING before the Grand Jury, and later stated that it was "brazen

9   interference with [the] investigation and Grand Jury Investigation" for certain

10   SCWW employees to have asserted their Fifth Amendment rights.  Of course, the

11   Fifth Amendment protects the innocent as well as the guilty.  *Miranda v. Arizona*,

12   384 U.S. 436, 472 (1966) ("The privilege against self-incrimination secured by the

13   Constitution applies to all individuals.").  Undoubtedly, the U.S. Constitution

14   guarantees that DEAN POE and WIRSING can assert their rights without fear of

15   retaliation or reprisal, and Defendant HARMAN's efforts to punish them for

16   asserting their constitutional rights cannot be countenanced.

17       80.    The COUNTY and its personnel, through the Ventura County Fire

18   Protection District ("District"), further engaged in retaliatory conduct against

19   DEAN POE and WIRSING when it claimed that WIRSING and POE—and only

20   them—are each *personally* jointly and severally liable for the emergency costs

21   allegedly incurred as a result of the ACCIDENT, amounting to $1,945,276.00.

22       81.    On March 10, 2016, POE and WIRSING each received letters from the

23   District claiming that WIRSING and POE were personally liable for the costs

24   associated with the emergency response to the fire that occurred at SCWW, and

25   demanding that each submit payment in the amount of $1,945,276.00 to the

26   District.

27       82.    Furthermore, these letters were received by POE and WIRSING only

28   after they filed their claims pursuant to the Government Code against the COUNTY

as described in this complaint.  These letters were sent one day after the COUNTY rejected POE and WIRSING's claims.

83.    Seeking $1,945,276.00 from two individual employees of SCWW— the only individuals to have made a claim against the COUNTY—serves as yet another method the COUNTY used to threaten, intimidate, and retaliate against WIRSING and POE.

84.    Based on the foregoing and on information and belief, COUNTY, the D.A.'s Office, and the Sheriff's Office had a pattern, practice, custom, and/or usage of retaliating against SCWW employees, including DEAN POE, WIRSING, and their families for their connection to SCWW, the Accident, and WIRSING's statements about the first responders' response to the Accident.

## FIRST CAUSE OF ACTION

### Unreasonable Searches (42 U.S.C. § 1983)

### Fourth and Fourteenth Amendments

(Against all individual Defendants except HARMAN and WOLD)

**Search of the Wirsing Residence (Plaintiff WIRSING against Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and TOTTEN)**

85.    WIRSING re-alleges and incorporates each allegation in paragraphs 1 through 84 of this Complaint as though fully set forth herein.

86.    On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Wirsing Residence, and/or authorized the search thereof.  WIRSING alleges this claim against those Defendants who executed the search on the Wirsing Residence, including but not limited to, Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described

**COMPLAINT**

herein at paragraphs 1 through 84.[1]

87.    WIRSING was present at the Wirsing Residence during the search and had a reasonable expectation of privacy.

88.    Defendants conducted the search of the Wirsing Residence in retaliation for WIRSING's connection to SCWW and his statements about the first responders to the Accident.  Defendants conducted the search with retaliatory intent to intimidate, punish, harass, and embarrass WIRSING and his family.  Defendants conducted the search of the Wirsing Residence in an unreasonable manner serving no legitimate law enforcement purpose, and thereby violated WIRSING's rights under the Fourth Amendment to be free from unreasonable searches.

89.    Defendants acted maliciously and with wanton disregard of WIRSING's rights.

90.    In addition, Defendants individually and/or through their agents conspired to violate WIRSING's civil rights under the Fourth Amendment by acting in concert to search the Wirsing Residence in a manner intended to retaliate against, punish, harass, and embarrass him for WIRSING's connection to SCWW and his statements about the first responders' response to the Accident.

91.    As a result of Defendants' unlawful conduct, WIRSING suffered great humiliation, embarrassment, and mental, emotional, and psychological harm, including posttraumatic stress disorder and a sleeping disorder.

**Search of the Poe Residence (The POE RESIDENCE PLAINTIFFS against Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and TOTTEN)**

92.    The POE RESIDENCE PLAINTIFFS re-allege and incorporate each allegation in paragraphs 1 through 91 of this Complaint as though fully set forth herein.

---

[1] The term "Defendants" when used in paragraphs 86 through 91 shall mean only those Defendants named in paragraph 86.

**COMPLAINT**

93.     On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Poe Residence, and/or authorized the search thereof.  The POE RESIDENCE PLAINTIFFS allege this claim against those Defendants who executed the search of the Poe Residence, including but not limited to, Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein.[2]

94.     The POE RESIDENCE PLAINTIFFS were each present at the Poe Residence when Defendants executed the search warrant, and each had a reasonable expectation of privacy in the Poe Residence.

95.     Defendants conducted the search of the Poe Residence in the manner they did in retaliation for DEAN POE's connection to SCWW, the Accident, WIRSING, and WIRSING's statements about the first responders' response to the Accident.  Defendants' acted with intent to intimidate, punish, harass, and humiliate the POE RESIDENCE PLAINTIFFS.  Defendants conducted the search of the Poe Residence in an unreasonable manner serving no legitimate law enforcement purpose, and thereby violated the POE RESIDENCE PLAINTIFFS' rights under the Fourth Amendment to be free from unreasonable searches.

96.     Defendants acted maliciously and with wanton disregard of the POE RESIDENCE PLAINTIFFS' rights.

97.     In addition, Defendants individually and/or through their agents conspired to violate the POE RESIDENCE PLAINTIFFS' civil rights under the Fourth Amendment by acting in concert to search the Poe Residence in a manner intended to retaliate against, intimidate, punish, harass, and embarrass them for DEAN POE's connection to SCWW, to WIRSING, and to WIRSING's statements about the first responders' response to the Accident.

---

[2] The term "Defendants" when used in paragraphs 93 through 98 shall mean only those Defendants named in paragraph 93.

**COMPLAINT**

98.    As a direct and proximate result of Defendants' conduct, the POE RESIDENCE PLAINTIFFS suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Strip Searches (Plaintiffs DEAN POE and WIRSING against Defendants DOES 1–10 and SHERIFF DEAN)**

99.    DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 98 of this Complaint as though fully set forth herein.

100.    On information and belief, agents and employees of the Sheriff's Office acted by virtue and under color of law in their individual and official capacities while imposing and/or authorizing strip searches on DEAN POE, WIRSING, and others at the Jail.  DEAN POE and WIRSING allege this claim against those Defendants who imposed strip searches upon them, including but not limited to, Defendants DOES 1–10 and Defendant SHERIFF DEAN in his official capacity, each as described herein at paragraphs 1 through 98.[3]

101.    Defendants executed the strip searches with an unlawful, retaliatory intent to punish, harass, and embarrass DEAN POE, WIRSING, and others for their connection to SCWW, WIRSING, and WIRSING's statements about the first responders to the Accident.  Defendants executed strip and visual cavity searches of DEAN POE, WIRSING, and others in a group, communal setting, without reasonable suspicion that they possessed weapons, drugs, evidence, or contraband, and without any legitimate law enforcement purpose, in direct violation of clearly established Ninth Circuit law and the Sheriff's Office's own policies and procedures on strip searches.

102.    The strip searches were therefore objectively unreasonable and Defendants thereby violated DEAN POE's and WIRSING's rights to privacy under

---

[3] The term "Defendants" when used in paragraphs 98 through 106 shall mean only those Defendants named in paragraph 98.

the Fourteenth Amendment and to be free from unreasonable searches under the Fourth Amendment.

103.   In addition, Defendants individually and/or through their agents conspired to violate DEAN POE and WIRSING's civil rights under the Fourth and Fourteenth Amendments by acting in concert to strip search them with a retaliatory intent to punish, harass, and embarrass.

104.   Defendants acted maliciously and with a wanton disregard of DEAN POE's and WIRSING's rights under the Fourth and Fourteenth Amendments.

105.   As a direct and proximate result of Defendants' misconduct as described, DEAN POE and WIRSING did and continue to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

106.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## SECOND CAUSE OF ACTION

**Unreasonable Searches (Cal. Civ. Code § 52.1)**

**California Constitution Article I §§ 1, 7, and 13**

(Against all individual Defendants except HARMAN and WOLD)

**Search of the Wirsing Residence (Plaintiff WIRSING against Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and TOTTEN)**

107.   Plaintiff WIRSING re-alleges and incorporates each allegation in paragraphs 1 through 106 of this Complaint as though fully set forth herein.

108.   On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Wirsing Residence, and/or authorized the search thereof.  WIRSING alleges this claim against those Defendants who executed the search upon the Wirsing Residence, including but not

**COMPLAINT**

limited to, Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein at paragraphs 1 through 106.[4]

109.   WIRSING was present at the Wirsing Residence during the search and had a reasonable expectation of privacy.

110.   Defendants searched the Wirsing Residence in retaliation for WIRSING's connection to SCWW and his statements about the first responders' response to the Accident.  Defendants acted with intent to intimidate, punish, harass, and embarrass WIRSING, his wife, and his six (6) year old daughter. Defendants conducted the search of the Wirsing Residence in an objectively unreasonable manner serving no legitimate law enforcement purpose, and thereby violated WIRSING's rights under Sections 1, 7, and 13 of Article I of the California Constitution, to be free from unreasonable searches.

111.   Defendants acted maliciously and with wanton disregard of WIRSING's rights.

112.   In addition, Defendants individually and/or through their agents conspired to violate WIRSING's civil rights under the Fourth Amendment by acting in concert to search the Wirsing Residence in a manner intended to retaliate against, intimidate, punish, harass, and embarrass him for his connection to SCWW and his statements about the first responders' response to the Accident.

113.   As a result of Defendants' unlawful conduct, WIRSING suffered great humiliation, embarrassment, and mental, emotional, and psychological harm, including posttraumatic stress disorder and a sleeping disorder.

---

[4] The term "Defendants" when used in paragraphs 108 through 113 shall mean only those Defendants named in paragraph 108.

1

**Search of the Poe Residence (The POE RESIDENCE PLAINTIFFS against**

2

**Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and**

3

**TOTTEN)**

4

      114.   The POE RESIDENCE PLAINTIFFS re-allege and incorporate each

5

allegation in paragraphs 1 through 113 of this Complaint as though fully set forth

6

herein.

7

      115.   On information and belief, agents and employees of the D.A.'s Office

8

acting under color of law forcibly entered and searched the Poe Residence, and/or

9

authorized the search thereof.  The POE RESIDENCE PLAINTIFFS allege this

10

claim against those Defendants who executed the search of the Poe Residence,

11

including but not limited to, Defendants BARRY, KRUEGER, HAMLIN,

12

MACINNES, DOES 1–10, and Defendant TOTTEN in his official capacity, each as

13

described herein at paragraphs 1 through 113.[5]

14

      116.   The POE RESIDENCE PLAINTIFFS were each present at the Poe

15

Residence when Defendants executed the search warrant, and each had a reasonable

16

expectation of privacy in the Poe Residence.

17

      117.   Defendants conducted the search of the Poe Residence in the manner

18

they did in retaliation to DEAN POE's connection to SCWW, the Accident,

19

WIRSING, and WIRSING's statements about the first responders' response to the

20

Accident.  Defendants acted with intent to intimidate, punish, harass, and humiliate

21

the POE RESIDENCE PLAINTIFFS.  Defendants therefore conducted the search

22

of the Poe Residence in an objectively unreasonable manner serving no legitimate

23

law enforcement purpose, and thereby violated the POE RESIDENCE

24

PLAINTIFFS' rights under Sections 1, 7, and 13 of Article I of the California

25

Constitution, to be free from unreasonable searches.

26

27

_____

28

[5] The term "Defendants" when used in paragraphs 115 through 120 shall mean only
those Defendants named in paragraph 115.

**COMPLAINT**

118.   Defendants acted maliciously and with wanton disregard of the POE RESIDENCE PLAINTIFFS' rights.

119.   In addition, Defendants individually and/or through their agents conspired to violate the POE RESIDENCE PLAINTIFFS' civil rights under Sections 1, 7, and 13 of Article 1 of the California Constitution, by acting in concert to search the Poe Residence in a manner intended to retaliate against, intimidate, punish, harass, and embarrass them for DEAN POE's connection to SCWW, to WIRSING, and to WIRSING's statements about the first responders' response to the Accident.

120.   As a direct and proximate result of Defendants' conduct, the POE RESIDENCE PLAINTIFFS suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Strip Searches (Plaintiffs DEAN POE and WIRSING against Defendants DOES 1–10 and SHERIFF DEAN)**

121.   DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 120 of this Complaint as though fully set forth herein.

122.   On information and belief, agents and employees of the Sheriff's Office acted by virtue and under color of law in their individual and official capacities while imposing strip searches on DEAN POE, WIRSING, and others at the Jail.  DEAN POE and WIRSING allege this claim against those Defendants who imposed strip searches upon them at the Jail, including but not limited to, Defendants DOES 1–10 and Defendant SHERIFF DEAN in his official capacity, each as described herein at paragraphs 1 through 120.[6]

123.   Defendants executed the strip searches with an unlawful, retaliatory intent to intimidate, punish, harass, and embarrass DEAN POE, WIRSING, and others.  Defendants executed strip and cavity searches of DEAN POE, WIRSING,

---

[6] The term "Defendants" when used in paragraphs 122 through 128 shall mean only those Defendants named in paragraph 122.

COMPLAINT

1  and others in a group, communal setting, without reasonable suspicion that they

2  possessed weapons, drugs, evidence, or contraband, and in direct violation of

3  clearly established Ninth Circuit law and the Sheriff's Office's own policies and

4  procedures on strip searches.

5       124.   The strip searches were therefore objectively unreasonable and

6  Defendants thereby violated DEAN POE and WIRSING's rights to privacy and to

7  be free from unreasonable searches under Sections 1, 7, and 13 of Article 1 of the

8  California Constitution.

9       125.   In addition, Defendants individually and/or through their agents

10  conspired to violate DEAN POE and WIRSING's civil rights under Sections 1, 7,

11  and 13 of Article I of the California Constitution by acting in concert to strip search

12  them with a retaliatory intent to intimidate, punish, harass, and embarrass them for

13  their connection to SCWW, WIRSING, and WIRSING's statements about the first

14  responders' response to the Accident.

15       126.   Defendants acted maliciously and with a wanton disregard of DEAN

16  POE's and WIRSING's rights under Sections 1, 7, and 13 of Article I of the

17  California Constitution.

18       127.   As a direct and proximate result of Defendants' misconduct as

19  described, DEAN POE and WIRSING did and continue to suffer emotional and

20  psychological pain, humiliation, embarrassment, suffering, and mental anguish.

21       128.   As a result of Defendants' conduct, Plaintiffs, and each of them,

22  suffered harm and are entitled to declaratory relief, injunctive relief, compensatory

23  damages, punitive damages, attorneys' fees, costs, and any other available remedies

24  and relief.

25

26

27

28

**COMPLAINT**

## **THIRD CAUSE OF ACTION**

### **Excessive Force, Unreasonable Seizures (42 U.S.C. § 1983)**

### **Fourth and Fourteenth Amendments**

(Against all individual Defendants except HARMAN and WOLD)

**Excessive Force and Unreasonable Seizures at Wirsing Residence (Plaintiff WIRSING against Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and TOTTEN)**

129.   WIRSING re-alleges and incorporates each allegation in paragraphs 1 through 128 of this Complaint as though fully set forth herein.

130.   On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Wirsing Residence, and/or authorized the search thereof.  WIRSING alleges this claim against those Defendants who executed the search upon the Wirsing Residence, including but not limited to, Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein at paragraphs 1 through 128.[7]

131.   Defendants conducted the search of the Wirsing Residence and detained the Wirsing Family in retaliation for WIRSING's connection to SCWW and his statements about the first responders' response to the Accident.  Defendants searched the Wirsing Residence and detained the Wirsing Family with a retaliatory intent to intimidate, punish, harass, and embarrass WIRSING and his wife and six (6) year old daughter.  Defendants' conduct was objectively unreasonable and bore no reasonable relation to any legitimate purpose.

132.   In addition, Defendants individually and/or through their agents conspired to violate WIRSING's civil rights under the Fourth Amendment by acting in concert to search the Wirsing Residence and detain Plaintiff David

---

[7] The term "Defendants" when used in paragraphs 130 through 133 shall mean only those Defendants named in paragraph 130.

Wirsing, his wife, and his six (6) year old daughter using force in a manner intended to retaliate against, punish, harass, and embarrass them for his connection to SCWW and his statements about the first responders' response to the Accident.

133.   As a direct and proximate result of Defendants' unlawful conduct, WIRSING suffered great humiliation, embarrassment, and mental suffering, including posttraumatic stress disorder and a sleeping disorder.

**Excessive Force and Unreasonable Seizures at Poe Residence (POE RESIDENCE PLAINTIFFS against Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and TOTTEN)**

134.   The POE RESIDENCE PLAINTIFFS re-allege and incorporate each allegation in paragraphs 1 through 133 of this Complaint as though fully set forth herein.

135.   On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Poe Residence, and/or authorized the search thereof.  The POE RESIDENCE PLAINTIFFS allege this claim against those Defendants who executed the search of the Poe Residence, including but not limited to, Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein at paragraphs 1 through 133.[8]

136.   Defendants' search of the Poe Residence and detentions of the POE RESIDENCE PLAINTIFFS utilized excessive force and thereby also violated the POE RESIDENCE PLAINTIFFS' rights under the Fourth Amendment to be free from unreasonable seizures.

137.   Defendants conducted the search of the Poe Residence and detained the POE RESIDENCE PLAINTIFFS in retaliation for DEAN POE's connection to SCWW, to the Accident, to WIRSING, and to WIRSING's statements about the

---

[8] The term "Defendants" when used in paragraphs 135 through 139 shall mean only those Defendants named in paragraph 135.

COMPLAINT

first responders' response to the Accident.  Defendant acted with intent to intimidate, punish, harass, and humiliate the POE RESIDENCE PLAINTIFFS. Defendants detained the POE RESIDENCE PLAINTIFFS in an objectively unreasonable manner bearing no reasonable relationship to any legitimate law enforcement purpose.

138.   In addition, Defendants individually and/or through their agents conspired to violate Plaintiffs' civil rights under the Fourth Amendment by acting in concert to search the Poe Residence and detain the POE RESIDENCE PLAINTIFFS using force in a manner intended to retaliate against, punish, harass, and embarrass.

139.   As a direct and proximate result of Defendants' unlawful conduct, the POE RESIDENCE PLAINTIFFS suffered great humiliation, embarrassment, and mental suffering.

**Excessive Force – Forced Strip Searches (Plaintiffs DEAN POE and WIRSING against Defendants DOES 1–10 and SHERIFF DEAN)**

140.   DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 139 of this Complaint as though fully set forth herein.

141.   On information and belief, agents and employees of the Sheriff's Office acted by virtue and under color of law in their individual and official capacities while imposing strip searches on DEAN POE, WIRSING, and others at the Jail.  DEAN POE and WIRSING allege this claim against those Defendants who imposed strip searches upon them at the Jail, including but not limited to, Defendants DOES 1–10 and Defendant SHERIFF DEAN in his official capacity, each as described herein at paragraphs 1 through 139.[9]

142.   Defendants acted intentionally and forcibly imposed the strip searches in a group, communal setting, without reasonable suspicion that DEAN POE,

---

[9] The term "Defendants" when used in paragraphs 141 through 146 shall mean the Defendants named in paragraph 141.

**COMPLAINT**

WIRSING, and others possessed weapons, drugs, or contraband, in direct violation of Ninth Circuit law and the Sheriff's Office's own policies and procedures on strip searches.  Defendants also imposed the strip searches with a retaliatory intent to intimidate, punish, harass, and embarrass DEAN POE, WIRSING, and others.  Defendants' conduct was objectively unreasonable and Defendants thereby violated DEAN POE's and WIRSING's rights to be free from unreasonable seizures under the Fourth Amendment.

143.   In addition, Defendants individually and/or through their agents conspired to violate DEAN POE and WIRSING's civil rights under the Fourth Amendment by acting in concert to forcibly impose strip searches on them in a group, communal setting and with a retaliatory intent to punish, harass, and embarrass them for their connection to SCWW, to WIRSING, and to WIRSING's statements about the first responders to the Accident.

144.   Defendants acted maliciously and with a wanton disregard of DEAN POE's and WIRSING's rights under the Fourth and Fourteenth Amendments.

145.   As a direct and proximate result of Defendants' misconduct as described, DEAN POE and WIRSING did and continue to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

146.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**COMPLAINT**

## FOURTH CAUSE OF ACTION

**Excessive Force, Unreasonable Seizures (Cal. Civ. Code § 52.1)**

**California Constitution Article I §§ 1, 7, and 13**

(Against all individual Defendants except HARMAN and WOLD)

**Excessive Force and Unreasonable Seizures at Wirsing Residence (Plaintiff WIRSING against Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and TOTTEN)**

147.   WIRSING re-alleges and incorporates each allegation in paragraphs 1 through 146 of this Complaint as though fully set forth herein.

148.   On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Wirsing Residence, and/or authorized the search thereof.  WIRSING alleges this claim against those Defendants who executed the search upon the Wirsing Residence, including but not limited to, Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein at paragraphs 1 through 146.[10]

149.   Defendants conducted the search of the Wirsing Residence and detained the Wirsing Family in retaliation for WIRSING's connection to SCWW and his statements about the first responders' response to the Accident.  Defendants searched the Wirsing Residence and detained the Wirsing Family with a retaliatory intent to punish, harass, and embarrass WIRSING, his wife, and his six (6) year old daughter.  Defendants' conduct was objectively unreasonable and bore no reasonable relation to any legitimate law enforcement purpose.

150.   In addition, Defendants individually and/or through their agents conspired to violate WIRSING's civil rights under Sections 1, 7, and 13 of Article 1 of the California Constitution, by acting in concert to search the Wirsing Residence

---

[10] The term "Defendants" when used in paragraphs 148 through 151 shall mean only those Defendants named in paragraph 148.

**COMPLAINT**

and detain WIRSING, his wife, and his six (6) year old daughter using force in a manner intended to retaliate against, intimidate, punish, harass, and embarrass.

151.   As a direct and proximate result of Defendants' unlawful conduct, WIRSING suffered great humiliation, embarrassment, and mental suffering, including posttraumatic stress disorder and a sleeping disorder.

**Excessive Force and Unreasonable Seizures at Poe Residence (POE RESIDENCE PLAINTIFFS and Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and TOTTEN)**

152.   The POE RESIDENCE PLAINTIFFS re-allege and incorporate each allegation in paragraphs 1 through 151 of this Complaint as though fully set forth herein.

153.   On information and belief, agents and employees of the D.A.'s Office acting under color of law forcibly entered and searched the Poe Residence, and/or authorized the search thereof.  The POE RESIDENCE PLAINTIFFS allege this claim against those Defendants who executed the search of the Poe Residence, including but not limited to, Defendants BARRY, KRUEGER, HAMLIN, MACINNES, DOES 1–10, and Defendant TOTTEN in his official capacity, each as described herein at paragraphs 1 through 151.[11]

154.   Defendants' search of the Poe Residence and detentions of the POE RESIDENCE PLAINTIFFS utilized excessive force and thereby also violated the POE RESIDENCE PLAINTIFFS' rights under Sections 1, 7, and 13 of Article 1 of the California Constitution, to be free from unreasonable seizures.

155.   Defendants conducted the search of the Poe Residence and detained the POE RESIDENCE PLAINTIFFS in the manner they did in retaliation for Plaintiff DEAN POE's connection to SCWW, the Accident whereat first responders were injured, Plaintiff DAVID WIRSING, and Plaintiff DAVID WIRSING's

---

[11] The term "Defendants" when used in paragraphs 153 through 157 shall mean only those Defendants named in paragraph 153.

**COMPLAINT**

statements about the first responders to the Accident.  Defendant acted with intent to intimidate, punish, harass, and humiliate the POE RESIDENCE PLAINTIFFS. Defendants therefore detained the POE RESIDENCE PLAINTIFFS in an objectively unreasonable manner bearing no reasonable relationship to any legitimate law enforcement purpose.

156.   In addition, Defendants individually and/or through their agents conspired to violate Plaintiffs' civil rights under Sections 1, 7, and 13 of Article 1 of the California Constitution, by acting in concert to search the Poe Residence and detain the POE RESIDENCE PLAINTIFFS using force in a manner intended to retaliate against, punish, harass, and embarrass.

157.   As a direct and proximate result of Defendants' unlawful conduct, the POE RESIDENCE PLAINTIFFS suffered great humiliation, embarrassment, and mental suffering.

**Excessive Force – Forced Strip Searches (Plaintiffs DEAN POE and WIRSING against Defendants DOES 1–10 and SHERIFF DEAN)**

158.   DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 157 of this Complaint as though fully set forth herein.

159.   On information and belief, agents and employees of the Sheriff's Office acted by virtue and under color of law in their individual and official capacities while imposing strip searches on DEAN POE, WIRSING, and others at the Jail.  DEAN POE and WIRSING allege this claim against those Defendants who imposed strip searches upon them at the Jail, including but not limited to, Defendants DOES 1–10 and Defendant SHERIFF DEAN in his official capacity, each as described herein at paragraphs 1 through 157.[12]

160.   Defendants acted intentionally and forcibly imposed the strip searches in a group, communal setting, without reasonable suspicion that DEAN POE,

---

[12] The term "Defendants" when used in paragraphs 159 through 164 shall mean only those Defendants named in paragraph 159.

WIRSING, and others possessed weapons, drugs, or contraband, in direct violation of established Ninth Circuit law and the Sheriff's Office's own policies and procedures on strip searches.  Defendants also forcibly imposed the strip searches with a retaliatory intent to intimidate, punish, harass, and embarrass DEAN POE, WIRSING, and others.  Defendants' conduct was therefore objectively unreasonable and Defendants thereby violated DEAN POE and WIRSING's right to be free from unreasonable seizures under Sections 1, 7, and 13 of Article I of the California Constitution.

161.   In addition, Defendants individually and/or through their agents conspired to violate DEAN POE and WIRSING's civil rights under Sections 1, 7, and 13 of Article I of the California Constitution by acting in concert to forcibly impose strip searches on them in a group, communal setting and with a retaliatory intent to punish, harass, and embarrass them for their connection to SCWW, Plaintiff WIRSING, and WIRSING's statements about the first responders' response to the Accident.

162.   Defendants acted maliciously and with a wanton disregard of DEAN POE's and WIRSING's rights under Sections 1, 7, and 13 of Article I of the California Constitution.

163.   As a direct and proximate result of Defendants' misconduct as described, DEAN POE and WIRSING did and continue to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

164.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**COMPLAINT**

# FIFTH CAUSE OF ACTION

## Retaliation (42 U.S.C. § 1983)

### First Amendment

(Against all individual Defendants except HAMLIN and MACINNES)

**Retaliation against Protected Speech (Plaintiff DEAN POE against Defendants HARMAN and WOLD; and Plaintiff WIRSING against all individual Defendants except HAMLIN and MACINNES)**

165.   DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 164 of this Complaint as though fully set forth herein.

166.   DEAN POE and WIRSING (1) expressed a viewpoint on a matter of public concern or (2) asserted their Fifth Amendment rights before a grand jury.

167.   Members of the Sheriff's Office, D.A.'s Office, and other COUNTY employees, agents, and officials were offended and therefore engaged in retaliatory conduct against WIRSING.  For example, Defendants HARMAN and WOLD concealed evidence in retaliation for DEAN POE and WIRSING asserting their Fifth Amendment rights before a grand jury.  Members of the D.A. SWAT Team including but not limited to Defendants BARRY, KRUEGER, DE LOS REYES, BORKOVEC, and DOES 1–10, executed the search of the Wirsing Residence and detained WIRSING and his family in retaliation to his comments on the first responders' response to the Accident.  Defendant TOTTEN authorized and/or ratified the D.A. SWAT Team's conduct.  Employees of the Sheriff's Office at the Jail strip and visual cavity searched WIRSING in retaliation to his comments on the first responders' response to the Accident.  Defendant SHERIFF DEAN authorized and/or ratified the Jail employees' conduct.  The COUNTY and its employees further retaliated against DEAN POE and WIRSING when it demanded payment of $1,945,276.60 from them personally for the Accident that occurred at their place of employment.

168.   Defendants' conduct would chill a person of ordinary firmness from future speech protected by the First Amendment.

169.   Defendants desired to chill DEAN POE's and WIRSING's protected speech, Defendants' desire was a direct cause for their unlawful conduct, and Defendants' conduct furthered no legitimate law enforcement purpose.  At all times, Defendants acted with an intent to harass, punish, and intimidate DEAN POE and WIRSING from further asserting their Fifth Amendment rights and WIRSING from further expressing his opinion about the first responders' response to the Accident.

170.   In addition, Defendants individually and/or through their agents conspired to violate WIRSING's civil rights under the First Amendment by acting in concert to execute unlawful searches, seizures, and detentions of WIRSING, his residence, and his family with a retaliatory intent to chill him from further expression.

171.   As a direct and proximate result of Defendants' unlawful conduct, DEAN POE and WIRSING suffered great humiliation, embarrassment, and mental suffering.

172.   DEAN POE and WIRSING are therefore entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CAUSE OF ACTION

**Retaliation (Cal. Civ. Code § 52.1)**

**California Constitution Art. I § 2**

(Against all individual Defendants)

**Retaliation against Protected Speech (Plaintiff DEAN POE against HARMAN and WOLD; and Plaintiff WIRSING against all individual Defendants except HAMLIN and MACINNES)**

173.   DEAN POE and WIRSING re-allege and incorporates each allegation in paragraphs 1 through 172 of this Complaint as though fully set forth herein.

174.   DEAN POE and WIRSING engaged in speech protected by Section 2 of Article I of the California Constitution, namely, they (1) expressed a viewpoint on a matter of public concern—the causes of the Accident and the injuries to first responders to the Accident; and (2) asserted their Fifth Amendment rights before a grand jury.

175.   Members of the Sheriff's Office, D.A.'s Office, and other COUNTY employees, agents, and officials were offended and therefore engaged in retaliatory conduct against WIRSING.  For example, Defendants HARMAN and WOLD concealed evidence in retaliation for DEAN POE and WIRSING asserting their Fifth Amendment rights before a grand jury.  Members of the D.A. SWAT Team including but not limited to Defendants BARRY, KRUEGER, HAMLIN, DE LOS REYES, MACINNES, BORKOVEC, and DOES 1–10, executed the search of the Wirsing Residence and detained WIRSING and his family in retaliation to his comments on the first responders' response to the Accident.  Defendant TOTTEN authorized and/or ratified the D.A. SWAT Team's conduct.  Employees of the Sheriff's Office at the Jail strip and visual cavity searched WIRSING in retaliation to his comments on the first responders' response to the Accident.  Defendant SHERIFF DEAN authorized and/or ratified the Jail employees' conduct.  The COUNTY and its employees further retaliated against DEAN POE and WIRSING

1  when it demanded payment of $1,945,276.60 from them personally for the
2  Accident that occurred at their place of employment.

3      176.   Defendants' conduct would chill a person of ordinary firmness from
4  future speech protected by Section 2 of Article 1 of the California Constitution.

5      177.   Defendants desired to chill DEAN POE's and WIRSING's protected
6  speech, Defendants' desire was a direct cause for their unlawful conduct, and
7  Defendants' conduct furthered no legitimate law enforcement purpose.  At all
8  times, Defendants acted with an intent to harass, punish, and intimidate POE and
9  WIRSING from further asserting their constitutional rights against self-
10 incrimination and for free expression.

11     178.   In addition, Defendants individually and/or through their agents
12 conspired to violate WIRSING's civil rights under Section 2 of Article I of the
13 California Constitution by acting in concert to execute unlawful searches, seizures,
14 and detentions of WIRSING, his residence, and his family with a retaliatory intent
15 to chill him from further expressing his opinion.

16     179.   As a direct and proximate result of Defendants' unlawful conduct,
17 DEAN POE and WIRSING suffered great humiliation, embarrassment, and mental
18 suffering.

19     180.   DEAN POE and WIRSING are therefore entitled to declaratory relief,
20 injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs,
21 and any other available remedies and relief.

22                    **SEVENTH CAUSE OF ACTION**
23               **Political Discrimination (42 U.S.C. § 1983)**
24                         **First Amendment**
25                    (Against all individual Defendants)
26 **Political Discrimination (Plaintiff DEAN POE against all individual**
27 **Defendants except DE LOS REYES, and BORKOVEC; and Plaintiff**
28

**COMPLAINT**

**WIRSING against all individual Defendants except HAMLIN and MACINNES)**

181.   DEAN POE and WIRSING re-allege and incorporate each allegation in paragraphs 1 through 180 of this Complaint as though fully set forth herein.

182.   DEAN POE and WIRSING engaged in protected speech.  WIRSING expressed a viewpoint on a matter of public concern, and DEAN POE and WIRSING were SCWW employees.

183.   Members of the Sheriff's Office, D.A.'s Office, and other COUNTY employees, agents, and officials were offended and therefore engaged in retaliatory conduct against DEAN POE and WIRSING, in connection with their positions as SCWW employees.  Specifically, members of the D.A. SWAT Team, including but not limited to, Defendants BARRY, KRUEGER, HAMLIN, DE LOS REYES, MACINNES, BORKOVEC, and DOES 1–10 executed unlawful searches upon the Poe and Wirsing Residences and unlawful detentions of DEAN POE and WIRSING.  Defendant TOTTEN authorized and/or ratified the D.A. SWAT Team's conduct.  Employees at the Jail, including but not limited to Defendants DOES 1–10, executed unlawful strip searches of DEAN POE and WIRSING.  Defendant SHERIFF DEAN authorized and/or ratified the unlawful strip searches of DEAN POE and WIRSING.

184.   Defendants' conduct was a direct result of their desire to chill DEAN POE and WIRSING's protected speech in connection with their positions as employees of SCWW.  At all times, Defendants acted with an intent to harass, retaliate, punish, and intimidate DEAN POE and WIRSING.

185.   Defendants' retaliatory conduct was not executed in furtherance of any legitimate law enforcement purpose.

186.   In addition, Defendants individually and/or through their agents conspired to violate DEAN POE and WIRSING's civil rights under the First

**COMPLAINT**

1  Amendment by acting in concert to chill DEAN POE and WIRSING from speech

2  protected by the First Amendment.

3      187.   As a direct and proximate result of Defendants' unlawful conduct,

4  DEAN POE and WIRSING suffered great humiliation, embarrassment, and mental

5  suffering.

6      188.   As a result of Defendants' conduct, Plaintiffs DEAN POE and DAVID

7  WIRSING, and each of them, suffered harm and are entitled to declaratory relief,

8  injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs,

9  and any other available remedies and relief.

10  **EIGHTH CAUSE OF ACTION**

11  **Political Discrimination (Cal. Civ. Code §§ 52.1 and 51.7(a))**

12  **California Constitution Article I § 2**

13  (Against individual Defendants)

14  **Political Discrimination (Plaintiff DEAN POE against all individual**

15  **Defendants except DE LOS REYES and BORKOVEC; and Plaintiff**

16  **WIRSING against all individual Defendants except HAMLIN and**

17  **MACINNES)**

18      189.   DEAN POE and WIRSING re-allege and incorporate each allegation

19  in paragraphs 1 through 188 of this Complaint as though fully set forth herein.

20      190.   DEAN POE and WIRSING engaged in speech protected by Section 2

21  of Article I of the California Constitution.  WIRSING expressed a viewpoint on a

22  matter of public concern, and DEAN POE and WIRSING were employees of

23  SCWW at all relevant times.

24      191.   Members of the Sheriff's Office, D.A.'s Office, and other County of

25  Ventura employees, agents, and officials were offended and therefore engaged in

26  retaliatory conduct against DEAN POE and WIRSING, in connection with their

27  positions as employees of SCWW.  Specifically, members of the D.A. SWAT

28  Team, including but not limited to, Defendants BARRY, KRUEGER, HAMLIN,

DE LOS REYES, MACINNES, BORKOVEC, and DOES 1–10 executed unlawful searches upon the Poe and Wirsing Residences and unlawful detentions of DEAN POE and WIRSING.  Defendant TOTTEN authorized and/or ratified the D.A. SWAT Team's conduct.  Employees at the Jail, including but not limited to Defendants DOES 1–10, executed unlawful strip searches of DEAN POE and WIRSING.  Defendant SHERIFF DEAN authorized and/or ratified the unlawful strip searches of DEAN POE and WIRSING.

192.   Defendants' conduct was a direct result of their desire to chill DEAN POE and WIRSING's protected speech in connection with their positions as employees of SCWW.  At all times, Defendants acted with an intent to harass, retaliate, punish, and intimidate DEAN POE and WIRSING for their connection to SCWW, the Accident, and WIRSING's statements about the first responders.

193.   Defendants' retaliatory conduct was not executed in furtherance of any legitimate law enforcement purpose.

194.   In addition, Defendants individually and/or through their agents conspired to violate DEAN POE and WIRSING's civil rights by acting in concert to chill DEAN POE and WIRSING from speech protected by Section 2 of Article I of the California Constitution.

195.   As a direct and proximate result of Defendants' unlawful conduct, DEAN POE and WIRSING suffered great humiliation, embarrassment, and mental suffering.

196.   As a result of Defendants' conduct, DEAN POE and WIRSING, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**COMPLAINT**

# NINTH CAUSE OF ACTION

## (42 U.S.C. § 1983)

### *Monell* Claims

(Against Defendant COUNTY OF VENTURA)

197.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 196 of this Complaint as though fully set forth herein.

198.   COUNTY's official policies, practices, customs, and/or usages violated Plaintiffs' rights, and the rights of all those similarly situated under the First Amendment, the Fourth Amendment, and the Fourteenth Amendment. COUNTY's official policies, practices, customs, and/or usages directly and proximately injured Plaintiffs, as alleged, entitling Plaintiffs to recover damages, pursuant to 42 U.S.C. § 1983.

199.   Specifically, COUNTY maintained or permitted the following official policies, practices, customs, and/or usages:

     a)  Authorizing and/or permitting the D.A. Office to indiscriminately use its SWAT Team to execute search warrants without first evaluating the reasonableness of heightened force;

     b)  Permitting, condoning, and/or ratifying COUNTY employees, members of the D.A. SWAT Team, and/or members of the Sheriff's Office to execute unreasonable searches, seizures, and detentions of residences and persons in a manner intended to punish, harass, and embarrass as retaliation;

     c)  Permitting, condoning, and/or ratifying COUNTY personnel to forcibly impose strip searches in a public setting and without regard to suspicion of weapons or contraband, to punish, harass, and embarrass pre-arraignment arrestees, in direct violation of the COUNTY's own official stated policies, the U.S. Constitution, and the California Constitution;

**COMPLAINT**

d) Condoning and encouraging officers to violate the rights of persons such as DEAN POE and WIRSING with impunity and with intent to punish, harass, and embarrass by forcibly imposing strip and visual cavity searches as retaliation;

e) Failure to provide adequate training or protocols to the D.A. SWAT Team with respect to threat assessment, constitutional limits on the use of force, and special weapons and tactics, consistent with the level of training required by professional SWAT Teams;

f) Permitting, condoning, and/or ratifying the formation of criminal gangs by COUNTY employees and the D.A. SWAT Team, including allowing such gangs to coerce, threaten, execute unlawful searches, seizures, and detentions upon individuals like Plaintiffs DEAN POE and DAVID WIRSING and their families;

g) Authorizing and encouraging deputy district attorneys to withhold evidence from criminal defendants in retaliation for their connection to SCWW, engagement in protected speech, and assertion of their Fifth Amendment rights;

h) Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

200. As a legal and proximate result of the described official policies, practices, customs, and/or usages, COUNTY violated Plaintiffs' rights to privacy, free speech, and to be free from unreasonable searches and seizures secured by the First, Fourth, and Fourteenth Amendments. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be proved at trial.

201. COUNTY has and will continue to permit and/or execute each of the aforementioned policies, patters, practices, customs, or usages in violation of Plaintiffs' civil rights and the civil rights of others. Plaintiffs therefore also seek

injunctive relief from COUNTY's ongoing policies, patterns, practices, customs, and/or usages alleged.

202.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## **TENTH CAUSE OF ACTION**

### **(Cal. Civ. Code § 52.3)**

(Against Defendant COUNTY OF VENTURA)

203.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 202 of this Complaint as though fully set forth herein

204.   COUNTY's official policies, practices, customs, and/or violated Plaintiffs' rights, and the rights of all those similarly situated, under Sections 1, 2, 7, and 13 of Article I of the California Constitution to be free from unreasonable searches and seizures, to due process and privacy, and to free speech.  COUNTY's official policies, practices, customs, and/or usages directly and proximately injured Plaintiffs, as alleged, entitling Plaintiffs to recover damages, pursuant to Cal. Civ. Code §§ 52.1 and 52.3.

205.   Specifically, COUNTY maintained or permitted the following official policies, practices, customs, and/or usages:

        a) Authorizing and/or permitting the D.A. Office to indiscriminately use its SWAT Team to execute search warrants without first evaluating the reasonableness of the use of such heightened force on a case-by-case basis;

        b) Permitting, condoning, and/or ratifying COUNTY employees, members of the D.A. SWAT Team, and/or members of the Sheriff's Office to execute unreasonable searches, seizures, and detentions of residences and persons in a manner intended to

punish, harass, and embarrass in retaliation for the Accident and certain individuals' statements about first responders;

c) Permitting, condoning, and/or ratifying COUNTY personnel to forcibly impose strip searches in a public setting and without regard to suspicion of weapons or contraband, to punish, harass, and embarrass pre-arraignment arrestees, in direct violation of the COUNTY's own official stated policies, the U.S. Constitution, and the California Constitution;

d) Condoning and encouraging officers to violate the rights of persons such as DEAN POE and WIRSING with impunity and with intent to punish, harass, and embarrass by forcibly imposing strip and cavity searches;

e) Failure to provide adequate training or protocols to the D.A. SWAT Team with respect to threat assessment, constitutional limits on the use of force, and special weapons and tactics, consistent with the requisite training for professional SWAT Teams;

f) Permitting, condoning, and/or ratifying the formation of criminal gangs by COUNTY employees and the D.A. SWAT Team, including allowing such gangs to coerce, threaten, execute unlawful searches, seizures, and detentions upon individuals like DEAN POE and WIRSING and their families;

g) Authorizing and encouraging deputy district attorneys to withhold evidence from criminal defendants in retaliation for their connection to SCWW, engagement in protected speech, and assertion of their Fifth Amendment rights;

h) Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

206.   As a legal and proximate result of the described official policies, practices, customs, and/or usages, COUNTY violated Plaintiffs' rights to be free from unreasonable searches and seizures, to due process and privacy, and to free speech.  Plaintiffs are entitled to compensatory and punitive damages in an amount to be proved at trial.

207.   COUNTY has and will continue to permit and/or execute each of the aforementioned policies, patters, practices, customs, or usages in violation of Plaintiffs' civil rights.  Plaintiffs therefore also seek injunctive relief from COUNTY's ongoing policies, patterns, practices, customs, and/or usages alleged.

208.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## ELEVENTH CAUSE OF ACTION

### Assault

#### (Against all individual Defendants except HARMAN and WOLD)

209.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 208 of this Complaint as though fully set forth herein.

210.   The individual Defendants[13] acted with intent to cause harmful or offensive contact, threatened to touch Plaintiffs in a harmful or offensive, and/or authorized such conduct as follows:

    a)  Defendant BARRY pointed his finger in WIRSING's face while screaming and threatening that he will make the D.A.'s Office come down on WIRSING harshly;

---

[13] The term "Defendants" when used in paragraphs 210 through 214 shall mean the individual Defendants specified in sub-paragraphs 210 (a)–(e), acting in the respective manners specified in each sub-paragraph.

**COMPLAINT**

b) Defendants DOES 1–10 forcibly imposed strip and visual-cavity searches on DEAN POE and WIRSING in the Jail;

c) Defendants BARRY, KRUEGER, HAMLIN, DE LOS REYES, MACINNES, BORKOVEC, and DOES 1–10 executed the search warrants on the Poe and Wirsing Residences and detained Plaintiffs at gun point;

d) As DA, Defendant TOTTEN authorized the searches of the Poe and Wirsing Residences and the detentions of the POE RESIDENCE PLAINTIFFS and WIRSING; and

e) As sheriff, Defendant SHERIFF DEAN authorized the strip searches of DEAN POE and WIRSING.

211.   Plaintiffs reasonably believed they were about to be touched in a harmful or offensive manner as described above, and/or it reasonably appeared that the Defendant in question was about to carry out the threat.

212.   Plaintiffs did not consent to the conduct and were coerced into physical compliance with the conduct of the Defendants in question.

213.   The conduct of the Defendants in question was a substantial factor in causing Plaintiffs to suffer emotional, mental, and psychological harm as a result.

214.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## TWELFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

(Against all individual Defendants)

215.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 214 of this Complaint as though fully set forth herein.

**COMPLAINT**

216.   Based on the foregoing, Defendants engaged in outrageous conduct that exceeds all bounds of decency usually tolerated in civilized society.

217.   Defendants recklessly disregarded the probability of causing or intended to cause Plaintiffs emotional distress.

218.   Plaintiffs have and continue to suffer severe emotional, mental, and psychological distress.

219.   Defendants' outrageous conduct was a direct and proximate cause of Plaintiffs' severe emotional, mental, and psychological distress.

220.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## THIRTEENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

#### (Against all individual Defendants)

221.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 220 of this Complaint as though fully set forth herein.

222.   Based on the foregoing, Defendants were negligent, Defendants caused Plaintiffs serious emotional distress, and Defendants' negligence was a substantial factor in causing Plaintiffs' serious emotional distress.

223.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, attorneys' fees, costs, and any other available remedies and relief.

## FOURTEENTH CAUSE OF ACTION

### False Imprisonment

#### (Against all individual Defendants except HARMAN and WOLD and SHERIFF DEAN)

224.   Plaintiffs re-allege and incorporate each allegation in paragraphs 1

COMPLAINT

through 223 of this Complaint as though fully set forth herein.

225.   Defendants intentionally deprived Plaintiffs of their freedom of movement by use of force, threats, menace, and unreasonable duress.  Specifically, members of the D.A. SWAT Team including but not limited to Defendants BARRY, KRUEGER, HAMLIN, DE LOS REYES, MACINNES, BORKOVEC, and DOES 1–10, falsely imprisoned each of Plaintiffs while executing searches of the Poe and Wirsing Residences.  Defendant TOTTEN authorized and/or ratified the conduct of the D.A. SWAT Team.

226.   Defendants' detention of Plaintiffs compelled Plaintiffs to stay outside of their residences for an appreciable period of time.

227.   Plaintiffs did not consent to Defendants' force, threats, menace, and unreasonable duress, and Defendants' force, threats, menace, and unreasonable duress were a substantial factor in causing Plaintiffs' harm.

228.   As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

A.     A judgment declaring COUNTY's policies, practices, customs, and usages unconstitutional;

B.     An order enjoining COUNTY's policies, practices, customs, and usages as follows:

- An injunction prohibiting COUNTY from allowing the D.A.'s Office to indiscriminately use its SWAT Team to execute search warrants without first evaluating the reasonableness of heightened force on a case-by-case basis;

**COMPLAINT**

- An injunction prohibiting COUNTY from allowing its employees, members of the D.A. SWAT Team, and/or members of the Sheriff's Office to execute unreasonable searches, seizures, and detentions of residences and persons as punishment, harassment, and embarrassment in retaliation for the Accident;

- An injunction prohibiting COUNTY from allowing COUNTY personnel to forcibly impose strip and cavity searches in a public setting and without regard to suspicion of weapons or contraband, to punish, harass, and embarrass pre-arraignment detainees, in direct violation of COUNTY's own official stated policies, the U.S. Constitution, and the California Constitution;

- An injunction prohibiting COUNTY from failing to adequately train or provide protocols to the D.A. SWAT Team regarding threat assessment, constitutional limits on the use of force, and special weapons and tactics, consistent with the level of training required by professional SWAT Teams;

- An injunction prohibiting COUNTY from authorizing and encouraging deputy district attorneys to withhold evidence from criminal defendants in retaliation for their connection to SCWW, their exercise of protected speech, or assertion of their Fifth Amendment rights;

- An injunction prohibiting COUNTY from ratifying the specific unconstitutional acts alleged herein; and

- Such further injunction as the Court shall find just and proper;

C.     Compensatory damages of at least $9 million, to be proved at trial;

D.     Punitive Damages against Defendants of at least $18 million, to be proven at trial;

E.     An award of reasonable attorneys' fees, costs, and expenses to Plaintiffs, pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial;

**COMPLAINT**

F.     Such other and further relief as this Court shall find just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated:  August 15, 2016                    **LARSON O'BRIEN LLP**


                                   By:/s/ Stephen G. Larson
                                      STEPHEN G. LARSON
                                      STEVEN E. BLEDSOE
                                      R.C. HARLAN
                                      Attorneys for Plaintiffs Dean Poe, Dana
                                      Poe, Kyle Poe, Karlee Poe, Kody Poe,
                                      Noah Martinez, and David Wirsing

**COMPLAINT**